IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY DOMINGUEZ O/B/O STEVEN S. JACKSON (DECEASED), | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. CIV-23-168-SM |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Tammy Dominguez, on behalf of her deceased son, Steven S. Jackson,[1]

(Plaintiff) seeks judicial review of the Commissioner of Social Security's final

---

[1] As the Commissioner points out, Ms. Dominguez' claim to any Title XVI Supplemental Social Security Income (SSI) benefits appears questionable at best. Doc. 18, at 13-14. While a surviving parent can receive benefits owed to a deceased claimant, in the case of a disabled or blind child, these benefits are payable to the claimant's parent only if the child "was living with his parent or parents at the time of his death or within [six] months immediately preceding the month of such death." 42 U.S.C. § 1383(b)(1)(A)(ii). Regulations governing SSI benefits also provide that "[n]o benefits may be paid to the estate of any underpaid recipient . . . or to any survivor other than [an eligible surviving spouse or parent]." 20 C.F.R. § 416.542(b)(4); *see Fowler v. Astrue*, 2010 WL 454765, at \*1 (M.D. Fla. Feb. 9, 2010) ("find[ing] that Plaintiff's claim for [SSI] extinguished upon his death, and that [his parents'] substitution is limited to seeking review of their son's denial for disability insurance benefits"); *Wasilauskis v. Astrue*, 2009 WL 861492, at \*2-3 (D. Me. Mar. 30, 2009) (finding mother "cannot be entitled to any SSI benefits on account of her son's claim because she is not among the narrowly defined class

decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 10, 11.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because the Administrative Law Judge (ALJ) "violated SSR 16-3p by failing to explain how he considered edema and [Plaintiff's] need to elevate his legs." Doc. 12, at 8-17; *see also* SSR 16-3p, 2017 WL 5180304.[2] After a careful review of the administrative record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[3]

---

of persons who may collect such benefits following a claimant's death"), *adopted*, 2009 WL 1078362 (D. Me. Apr. 21, 2009).

Plaintiff's counsel offered no explanation in his opening brief, and he chose not to file a reply brief. So, the Court will proceed as to Plaintiff's Title II claim only.

[2] Plaintiff's counsel, Daniel A. Parmele, is familiar with this Court's rules. His opening brief flouted those rules, *see* LCvR 7.1(e) ("Briefs longer than 15 pages shall be accompanied by an indexed table of contents *showing headings or sub-headings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited.*") (emphasis added). The truncated "table of contents" counsel inserted contains no subheadings and counsel omitted any table of authorities. The Court could strike the brief and require counsel to refile. In the interest of judicial economy, the Court will allow the filing in this case.

[3] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines a disabled individual as a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C.     Relevant findings.**

**1.     Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 940-52; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since March 13, 2017, the alleged onset date;

(2)   had the severe medically determinable impairments of status post congestive heart failure, chronic venous insufficiency, hypertension, chronic peripheral edema, chronic obstructive pulmonary disorder, obstructive sleep apnea, small umbilical and inguinal hernias, hearing loss, and obesity;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residual functional capacity[4] (RFC) to perform sedentary work except the claimant could occasionally, balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; could never climb ladders, ropes, or scaffolds; and had to avoid concentrated exposure to dusts, fumes, gases, odors, poor ventilation, and very loud noises and hazards, such as unprotected heights and heavy machinery;

(5)   was unable to perform his past relevant work;

---

[4]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1).

(6)  could perform jobs that exist in significant numbers in the national economy such as document preparer, addresser, and call out operator; and so,

(7)  had not been under a disability from March 13, 2017, through August 2, 2022.

*See* AR 940-52.

## 2. Appeals Council's findings.

This Court once remanded this case for further consideration. AR 938. The Social Security Administration's Appeals Council reviewed Plaintiff's filed exceptions to the ALJ's decision but "found no reason under [its] rules to assume jurisdiction." *Id.* at 929. So, the ALJ's decision is "the final decision of the Commissioner after remand." 20 C.F.R. § 404.984(d); *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted). Further, substantial evidence "must be based upon the record taken as a whole." *Wall*, 561 F.3d at 1052. "[E]vidence is not substantial if it is overwhelmed by other evidence in the record." *Id.*

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

## B. Substantial evidence supports the ALJ's RFC assessment.

Plaintiff challenges the ALJ's omission of any leg-elevation consideration from the RFC assessment. He maintains the ALJ "violated [SSR] 16-3p by failing to explain how he considered edema and Jackson's need to elevate his legs." Doc. 12, at 8. SSR 16-3p requires more than a single conclusory statement or a mere recitation of factors. Rather,

> [t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304, at *10.

As the Commissioner points out, the ALJ did consider Plaintiff's subjective complaints about his edema (finding it a severe impairment) and his need to elevate his legs. Doc. 18, at 5; AR 941 (severe impairment finding); *see also* AR 946. The ALJ summarized that Plaintiff testified he was disabled due to leg swelling and lower leg edema; sometimes, he would use a walker that was not prescribed, and every day his feet would swell requiring elevation for two-to-three hours at a time. AR 946. The ALJ also noted Plaintiff alleged difficulties in his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, and complete tasks. *Id.*

The ALJ's reasoning did not violate SSR 16-3p. First, Plaintiff objects to the ALJ's characterization of his treatment as "conservative." Doc. 12, at 8-11. The ALJ considered Plaintiff's testimony about Plaintiff's need to elevate his legs and Dr. Nicole Tran's opinion noting the same. AR 950. The ALJ found this opinion not persuasive, as the objective medical evidence did not support such a limitation. *Id.* He also noted that Dr. Tran did not mention Plaintiff's repeated non-compliance with treatment and medications. *Id.* He also considered Plaintiff's activities, including that he can go out alone, care for his dog, maintain his personal hygiene and grooming, prepare meals, perform household chores, pick up trash and dirty clothes, take out the trash, sweep, shop in stores, and watch television. *Id.* The ALJ also observed that Plaintiff spends time with others, plays dominoes, and plays with go-carts. *Id.*

The ALJ also discounted Plaintiff's consistency. *Id.* at 946. The ALJ noted that Plaintiff testified he needed to elevate his legs for two-to-three hours at a time and has recurrent breathing problems. *Id.* Plaintiff testified and told providers he uses a CPAP machine to alleviate his sleep apnea. *Id.* at 972, 946. But ALJ also noted Plaintiff's mother stated the CPAP machine is hers. *Id.* at 946. Similarly, Plaintiff testified and told providers he had used a prescribed portable oxygen tank for the past ten months before the hearing. *Id.* at 971, 946. But the ALJ noted the medical record contained no prescription

8

for the oxygen tank. *Id.* at 946. He also pointed to two hospital visits where Plaintiff did not have the oxygen tank with him. *Id.*

The ALJ also considered Plaintiff's activities in discounting his consistency:

> He is able to go out alone, care for his dog, maintain his personal hygiene and grooming, prepare meals, perform household chores, pick up trash and dirty clothes, take out the trash, sweep, shop in stores, and watch television. The claimant has a girlfriend, lives with family, spends time with others, plays dominoes, and does not have a problem getting along with others. He has no problems paying attention and he finishes what he starts. The claimant's ability to engage in the foregoing activities indicates that he is not precluded from all work-related activities.

*Id.*

As to inconsistencies in the record about Plaintiff's need to elevate his legs, the ALJ's repeated reliance on Plaintiff's evidence of ambulation and other activities supports his decision discounting both Dr. Tran's opinion (finding it not persuasive) and Plaintiff's testimony and subjective complaints. And the ALJ's RFC assessment tracks the limitations assessed by State agency physicians who reviewed the record in August 2019, October 2019, March 2022, and June 2022, as well as the consultative examiner's June 2019 opinion. *Id.* at 947-48, 950.

The ALJ also noted the evidence of Plaintiff's noncompliance with treatment and medication. *Id.* at 949. SSR 16-3p instructs:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.

SSR 16-3p, 2017 WL 5180304, at *9.

In September 2018, Plaintiff sought treatment for left eye swelling and was diagnosed, but did not return for scheduled treatment. AR 947. A January 2020 record notes Plaintiff's noncompliance for at least two weeks. *Id.* at 948. In October 2020, Plaintiff left the hospital against medical advice. *Id.* During a September 2021 emergency room visit, Plaintiff tested positive for COVID-19 and at first declined treatment. *Id.* at 949. After his COVID-19 infection and congestive heart failure showed improvement, he was noncompliant and left against medical advice. *Id.* And during a January 2022 emergency room visit during which he again tested positive for COVID-19 and received breathing treatment, he refused an antibody fusion treatment and never picked up his prescribed steroid taper. *Id.* That same month, Plaintiff received treatments for sinus tachycardia, but "[c]ompliance was noted to be a significant issue and he was smoking methamphetamines two days prior." *Id.*

During this period, Plaintiff was using methamphetamine daily, as he had for twenty-two years. *Id.* at 947. Records from January, May, and

10

August 2019 note Plaintiff's admission to daily methamphetamine use. *Id.* at 947-948. (In June of that year, Plaintiff reported that he had quit using methamphetamine in May. *Id.* at 947.)

Plaintiff argues that SSR 16-3p requires the ALJ to consider his reasons for noncompliance, noting he lacks insurance. Doc. 12, at 12 (citing AR 595: "He reports being out of his Lasix and other medications over the last couple months. He says he does not have a primary care physician and has no insurance and therefore he has not seen a primary care physician for any refills."); *see also* SSR 16-3p, 2017 WL 5180304, at *9-10 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *Alarid v. Colvin*, 590 F. App'x 789, 793 (10th Cir. 2014) ("[T]he ALJ is ordinarily required to address [a claimant's inability to pay for treatment] before drawing adverse inferences from the claimant's failure to seek or pursue treatment.").

While the undersigned agrees the ALJ did not consider Plaintiff's lack of insurance, the ALJ considered Plaintiff's repeated instances of noncompliance and repeated emergency room visits along with the entire medical record, the state agency doctors' opinions, and the opinion of the

11

consultative examiner. AR 945; *see Wright v. Saul*, No. CIV-18-822-BMJ, 2019 WL 4145235, at *9 (W.D. Okla. Aug. 30, 2019) (affirming ALJ's conclusion that "Plaintiff's noncompliance with treatment weakened the credibility of her allegations") (quotations and alterations omitted) (citing SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.")). The ALJ noted Plaintiff's symptoms improved with treatment. AR 947 (noting improvements during treatment in July 2017, Feb. 2019, May 2019), 948 (noting improvements during treatment June 2019, March 2020), 949 (noting improvements during treatment Sept. 2021, Oct. 2021, Jan. 2022). And SSR 16-3p does not preclude an ALJ from relying on objective medical evidence in evaluating a claimant's symptoms. Instead, it prohibits the ALJ from relying on it exclusively. *See* SSR 16-13p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms."). That is not what the ALJ did here.

Substantial evidence supports the ALJ's decision.

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 20th day of September, 2023.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE